## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| BRYCE CHEROY CAMPBELL, | |
| Plaintiff, | |
| v. | |
| PFC THOMAS SIMS, *in his official and individual capacities,* OTHER UNKNOWN OFFICERS OF THE TAKOMA PARK POLICE DEPARTMENT and CITY OF TAKOMA PARK, | Civil Action No. TDC-20-2590 |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Bryce Cheroy Campbell filed this civil action against Defendant Private First Class ("PFC") Thomas Sims ("Officer Sims"), sued in his official and individual capacities, Other Unknown Officers of the Takoma Park Police Department ("the John Doe Officers"), and the City of Takoma Park ("Takoma Park") in the Circuit Court of Montgomery County, Maryland asserting federal and state constitutional claims and state tort claims stemming from his seizure on April 8, 2017 for purposes of an emergency mental health examination and his subsequent involuntary commitment. Officer Sims filed a Motion for Summary Judgment, asserting, in part, that he had qualified immunity to Campbell's federal constitutional claims. The Court denied summary judgment, in part on the grounds that that at the time of the events at issue, it was clearly established, based on *Bailey v. Kennedy*, 349 F.3d 731, 740–41 (4th Cir. 2003), and related cases, that individuals have a right under the Fourth Amendment to the United States Constitution not to be seized for purposes of a mental health examination unless the seizing law enforcement officers

have probable cause to believe both that they have a mental health condition and that they pose a danger to themselves or others, and that such probable cause cannot be based on a report that the individual may pose a danger if the officers' first-hand observations upon encountering the individual do not support such a conclusion. *Campbell v. Sims*, No. TDC-20-2590, 2021 WL 2685706, at *8 (D. Md. June 30, 2021). The Court also concluded that there remained, at a minimum, a genuine issue of material fact on whether the information available to the officers established probable cause to seize Campbell for purposes of a mental health examination. *See id.* at *9–10. Officer Sims has filed an interlocutory appeal of that denial of summary judgment based on qualified immunity, *see* ECF No. 36, and has also filed a Motion to Stay All Proceedings Pending Appeal ("Motion to Stay"), ECF No. 44. Campbell opposes the Motion. The Court has reviewed the briefs and submitted materials and finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Officer Sims's Motion to Stay will be GRANTED, and this case will be stayed pending resolution of his interlocutory appeal.

## DISCUSSION

"[T]he power to stay proceedings is incidental to the power in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to stay a case pending appeal, courts consider four factors: (1) whether the stay applicant has made a strong showing of a likelihood of success on the merits; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). It is not necessary that all four factors weigh in favor of a stay; rather the court may balance the factors to determine whether a stay is warranted. *See St. Agnes Hosp. of*

2

*City of Balt., Inc. v. Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990) (noting that the four factors must be "viewed together" and the "interests of the movant balanced against the interests of the other parties and the public" (citation omitted)). *See also Hilton*, 481 U.S. at 777 (stating, where the State filed a motion to stay the district court's issuance of writ of habeas corpus pending appeal, that "[s]ince the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules"); *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (stating that the power of a district court to stay trial proceedings is discretionary and calls for the balancing of "the various factors relevant to the expeditious and comprehensive disposition" of a case (citation omitted)). The Court discusses each factor in turn.

## I.     Likelihood of Success on the Merits

Officer Sims offers two arguments as to why he is likely to succeed on the merits of his appeal. First, he asserts that this Court erroneously failed to apply or misapplied the collective knowledge doctrine when assessing whether, upon consideration of the facts in the light most favorable to Campbell, Officer Sims had probable cause to seize Campbell for a mental health examination. In particular, Officer Sims argues that the collective knowledge doctrine shields him from liability to the extent that he acted reasonably in relying on a fellow officer's determination that probable cause existed. Officer Sims also argues that the asserted right to be free from seizure for a mental health evaluation was not clearly established at the time of the events at issue. In opposing the Motion to Stay, Campbell asserts that Officer Sims is unlikely to succeed on the merits of his appeal because the United States Court of Appeals for the Fourth Circuit lacks jurisdiction to hear it and because, even if the appeal is heard, Officer Sims is unlikely to succeed on the merits.

3

Turning first to the question whether the Fourth Circuit has jurisdiction to hear the appeal, United States Courts of Appeals generally have jurisdiction only over "final decisions of the district courts." 28 U.S.C. § 1291 (2018). However, "[t]o the extent that an order of a district court rejecting a governmental official's qualified immunity defense turns on a question of law, it is a final decision within the meaning of § 1291 ... and therefore is subject to immediate appeal." *Winfield v. Bass*, 106 F.3d 525, 528 (4th Cir. 1997); *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). This rule allows for interlocutory appellate review of a denial of qualified immunity when the appeal is based on a "purely legal issue" such as "what law was clearly established," but not when the appeal is of a matter of "evidence sufficiency," such as whether qualified immunity was properly denied based on the conclusion that there was "a genuine issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 313, 319–20 (1995). The fact that an appeal includes both types of arguments does not necessarily deprive an appellate court of jurisdiction. Instead, it is job of the appellate court to "parse[]" the intermingled assertions of error and consider only the legal arguments. *Iko v. Shreve*, 535 F.3d 225, 234–35 (4th Cir. 2008) ("[O]ur first task on appeal is to separate the district court's legal conclusions regarding entitlement to qualified immunity, over which we have jurisdiction, from its determinations regarding factual disputes, over which we do not.").

Here, Officer Sims's appeal, even if addressing certain factual issues, includes a challenge to this Court's legal determination on the contours of clearly established law at the time of Campbell's seizure on the circumstances under which an individual may be seized for a mental health examination. As a result, the Court is sufficiently satisfied that the Fourth Circuit has jurisdiction over at least some elements of Officer Sims's appeal that it does not conclude that Officer Sims is unlikely to succeed on that appeal based on a lack of jurisdiction.

On the likelihood of success on the merits of his appellate claims, Officer Sims advances two primary arguments. First, Officer Sims asserts that this Court misapplied the collective knowledge doctrine, which generally provides that a court may "substitute the knowledge of the instructing officer or officers for the knowledge of the acting officer" when determining if there was probable cause for a search or seizure. *United States v. Patiutka*, 804 F.3d 684, 691 (4th Cir. 2015). Officer Sims argues that the collective knowledge doctrine also shields an arresting officer from a civil suit if that officer conducted the arrest in reasonable reliance on another officer's conclusion that there was probable cause. He argues that based on this principle, he was entitled to qualified immunity because he participated in the seizure of Campbell based on Acting Sergeant Kristian Pederson's determination that there was probable cause to do so.

Officer Sims points to no controlling authority in support of this principle. He instead relies on the decision of the United States Court of Appeals for the Second Circuit in *Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007), a case Officer Sims did not cite in his Motion for Summary Judgment briefing, in which the Second Circuit described the concept of "arguable probable cause," which allows for qualified immunity to civil liability for an illegal seizure when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Id.* at 369 (citation omitted). Although the doctrine ostensibly allows an officer to be shielded from civil liability based on a reasonable belief that probable cause existed, the court emphasized that "probable cause remains the relevant standard," and "[i]f officers of reasonable competence would have to agree that the information possessed by the officer at the time of the arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Id.* at 370 (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)). *Zellner* does not

broadly hold, as Officer Sims suggests, that arresting or seizing officers are immune from civil liability simply if they acted in reliance on a fellow officer who vouched for the existence of probable cause. That proposition instead comes from an unpublished district court case which extended traditional collective knowledge doctrine principles to reach this conclusion. *See Golphin v. City of New York*, No. 09 Civ. 1015(BSJ), 2011 WL 4375679, at *2 (S.D.N.Y. Sept. 19, 2011). Where Officer Sims advances a theory to extend the collective knowledge doctrine to be used as a shield as part of an argument for qualified immunity that has not been accepted by the Fourth Circuit, and Officer Sims has not shown that any other circuit has accepted it, the Court finds that Officer Sims has not shown a likelihood of success on the merits of his appeal based on his collective knowledge doctrine argument.

Officer Sims's second argument on appeal is that while it was clearly established that in order to seize a person for purposes of a mental health evaluation, police officers need probable cause to believe both that the individual has a mental disease or defect and that the individual poses a danger to self or others, it would not have been clear to reasonable officers that on the issue of danger, they could not rely solely on the reports of others if, upon encountering the individual, they did not see or hear anything that would indicate that the individual posed such a danger. As discussed in the Court's prior memorandum opinion, this proposition is clearly established by *Bailey,* and the facts in that case are sufficiently similar to those present here to put a reasonable officer on notice that, based on the facts available on summary judgment as viewed in the light most favorable to Campbell, the seizure of Campbell violated the law. *See Campbell*, 2021 WL 2685706, at *8–9. Accordingly, the Court cannot conclude that Officer Sims is likely to succeed on the merits of his appeal on this theory. Nevertheless, the Court acknowledges that in effectively arguing that *Bailey* is insufficient to put officers on notice of clearly established law, Officer Sims

6

has presented a non-frivolous, colorable argument for appeal that raises a serious question of law that may be sufficient to permit a stay. *See Krell v. Queen Anne's Cnty.*, No. JKB-18-0637, 2020 WL 416975, at *2 (D. Md. Jan. 27, 2020) (granting a stay of a qualified immunity appeal based in part on the conclusion that while the appeal was unlikely to succeed, it raised "serious questions of law"); *U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC 08-1863, 2015 WL 3973071, at *6 (D. Md. June 29, 2015) (granting a stay pending an interlocutory appeal where the moving party had not shown a "strong likelihood of success on appeal" but had "identified specific legal findings that raise serious questions of law" on appeal, where the remaining factors weighed in favor of the stay); *St. Agnes Hosp.*, 751 F. Supp. at 76 (explaining that a stay may be warranted based on other factors if the appeal "raises serious and difficult questions of law in an area where the law is somewhat unclear" (citation omitted)).

## II.     Irreparable Injury

Officer Sims asserts that he will be irreparably injured absent a stay because requiring him to litigate Campbell's claims would entirely undermine the right to be free from the burdens of litigation that qualified immunity is meant to secure.

The United States Supreme Court has stated that qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526. *See Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 229 (4th Cir. 2002) ("[Q]ualified immunity is an immunity from having to litigate."). This immunity is thus "effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526. Further, "even such pretrial matters as discovery are to be avoided if possible." *Id.* In particular, government officials should not be subjected to "the costs of trial or to the burdens of broad-reaching discovery in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Id.*

7

Where one basis of Officer Sims's appeal is that the right he allegedly violated was not clearly established at the time of the events at issue, and where, for the reasons stated above, the Court finds that basis for appeal to be non-frivolous, the concerns about an erroneous deprivation of qualified immunity are at their zenith. If Officer Sims were to prevail on appeal, but this Court were to have allowed discovery to proceed while that appeal is pending, the right Officer Sims seeks to vindicate will effectively have been lost. *See, e.g.*, *McSurely v. McClellan*, 697 F.3d 309, 317 (D.C. Cir. 1982) (noting that a party seeking a stay from a denial of summary judgment on qualified immunity should be able to establish irreparable injury).

Campbell nevertheless argues that because he has asserted in the Complaint, in addition to the § 1983 claim, state constitutional and common law claims against Officer Sims and Takoma Park, Officer Sims would be subject to the burdens of discovery, either as a defendant or witness on those state law claims, regardless of the outcome of the appeal. There is, however, no guarantee that the case will continue to proceed in this Court if the § 1983 claim is dismissed. Such dismissal would deprive the Court of original jurisdiction over this case and would likely result in dismissal of the remaining state law claims over which the Court presently has supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (permitting, upon the dismissal of all claims over which a federal court had original jurisdiction, dismissal of state law claims over which the court had supplemental jurisdiction). The Court therefore finds that the absence of a stay would irreparably harm Officer Sims.

## III.   Injury to the Other Parties

On the third factor, whether a stay will substantially injure the other parties, Campbell asserts that he will suffer such harm because "[m]emories fade." Opp'n at 10, ECF No. 47. Although the risk of the loss of evidence is inherent in all stays, in this instance, the interactions

8

between Campbell and the responding officers were recorded multiple times on the officers' body cameras, so concerns about evidence degradation are mitigated. *Cf. Scott v. Harris*, 550 U.S. 372, 378 (2007) (in a case on interlocutory appeal on the issue of qualified immunity, reversing the denial of the defendant police officer's motion for summary judgment based on body camera footage of the incident).

To the extent that Campbell voices a more general concern about delaying a prompt disposition of his case, he points to no substantive remedy that he will lose as a result of a stay. At this point, the case has been pending for approximately one year, there have been no substantial delays in the case, and discovery has already begun. Throughout the litigation, Officer Sims has acted promptly, making no requests to extend any applicable deadlines. Under these circumstances the harm that a stay would impose on Campbell is limited and does not counterbalance the injury that a stay would cause to Officer Sims.

## IV.     Public Interest

On the fourth factor, the public has an abiding interest in the "deterrence of unlawful conduct" on the part of government officials and in "compensation of victims" of such unlawful conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). It also has an interest in the prompt resolution of civil disputes in the courts. At the same time, the public has an interest in having government officials, when required to take action in circumstances where clearly established rights are not implicated, proceed "with independence and without fear of consequences." *Mitchell*, 472 U.S. at 525 (quoting *Harlow*, 457 U.S. at 819). The public interest therefore may, at times, lie in avoiding the costs of subjecting government officials to the burdens of litigation, which include "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.* at 525–26 (quoting *Harlow*, 457

9

U.S. at 816). Accordingly, the Supreme Court has made clear that "there is a strong public interest in protecting officials from the costs of damages actions" that "is best served by a defense permitting insubstantial lawsuits to be quickly terminated." *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998).

Officer Sims's appeal presents the question whether certain rights were clearly established at the time of the events at issue, and the viability of Campbell's federal claim hinges on that question. In this instance, a stay would prevent government officials from incurring the costs and burdens of litigation until it is certain that the case may proceed further. It would not prevent any favorable outcome for Campbell, and the resulting delay would not impose an excessive burden on Campbell. Under these circumstances, the public interest slightly favors a stay.

## V.     Balance of the Factors

As discussed above, Officer Sims's appeal implicates serious questions of law, and the remaining three factors favor a stay. While a stay will delay resolution of this case for Campbell to a certain degree, it would also preserve Officer Sims's right not to be required to litigate a case if he can establish on appeal that he is entitled to qualified immunity. Accordingly, upon a weighing of the four relevant factors, the Court finds that the balance tips in favor of a stay. *See Krell*, 2020 WL 416975, at *3 (granting a stay pending an appeal of the denial of qualified immunity where "the defendant has presented a plausible claim for immunity and the balance of hardships favors a stay").

10

## CONCLUSION

For the reasons set forth above, Officer Sims's Motion to Stay will be GRANTED, and this

case will be stay pending resolution of the interlocutory appeal. A separate Order shall issue.

Date: September 23, 2021

THEODORE D. CHUANG
United States District Judge

11